Heather FARMER and Her Husband,
Justin Farmer, Appellants
Plaintiffs Below,

v.

Faith A. BROSCH, M.D., Maternity &
Gynecology Associates, P.A., Christiana Care Health Services, Inc., and
Christiana Care Corporation, Appellees Defendants Below.

No. 230, 2010.

Supreme Court of Delaware.

Submitted: Oct. 6, 2010.

Decided: Dec. 1, 2010.

M. Jean Boyle and Joseph J. Longobardi, III of Longobardi Law Office, Wilmington, Delaware for appellants.

Mason E. Turner, Jr. of Prickett, Jones & Elliott, P.A., Wilmington, Delaware for appellees Faith A. Brosch, M.D. and Maternity & Gynecology Associates, P.A.

Amy A. Quinlan of Morris James LLP, Wilmington, Delaware for appellee Christiana Care.

Before STEELE, Chief Justice,
JACOBS and RIDGELY, Justices.

STEELE, Chief Justice:

Heather Farmer suffered vaginal and genital lacerations during childbirth. She and her husband sued the obstetrician and the hospital. After sending "Notices of Intent" to the doctor and hospital, the Farmers filed a complaint, but failed to attach the Notices. A Superior Court judge denied the Farmers' Motion for Leave to Amend, having found, on the basis of the relation back doctrine, the complaint time barred by the two year statute of limitations. Therefore, the judge found no valid filing to which the

amendment could relate, and granted defendants' Motion to Dismiss the Farmers' complaint. We **REVERSE.**

## I. FACTS AND PROCEDURAL HISTORY

On July 28, 2007, Christiana Hospital admitted Heather Farmer because of labor complications. Dr. Faith Brosch was the obstetrician on call. After examining Farmer, Brosch decided not to order an episiotomy, which is a procedure designed to enlarge the vaginal opening during childbirth. Farmer delivered her baby that night, but the delivery caused lacerations to her vagina and genitalia. The Farmers allege that while repairing these lacerations, Brosch improperly sutured Farmer's labia to her clitoral hood and sutured her labia minora and labia majora. Consequently, Farmer had to undergo another surgery in November 2007 to correct Brosch's surgery. Farmer claims that despite the revision surgery, she still suffers from disfigurement, significant pain, and discomfort.

On July 21, 2009, seven days before the expiration of the applicable two year statute of limitations on the Farmers' claims of negligence and loss of consortium, the Farmers sent Notices of Intent to investigate to Brosch and Christiana by certified mail, return receipt requested, pursuant to 18 *Del. C.* § 6856(4).[1] The Farmers intended these letters to toll the statute of limitations an additional 90 days, as Section 6856(4) permits. On October 14, 2009, the Farmers filed their complaint against Brosch and Christiana. The complaint attached copies of the certified mail return receipts, but did not attach copies of the Notices of Intent or mention the Notices of Intent. Christiana moved to Dismiss for failure to comply with Section 6856(4), which states that the Notices of Intent "shall be attached" to the complaint to prove compliance with the statute of limitations. A Superior Court judge granted the motion, yet also acknowledged that the Notices of Intent *had been sent* according to the terms of Section 6856(4). The Farmers moved for reargument and to amend their complaint simply to add the Notices to the certified mail return receipts. The Court held a hearing and denied both of the Farmers' motions. The judge held that because the Farmers failed to attach the Notices of Intent to their complaint, they could not toll the statute of limitations. Without the extended 90 day period, the judge held that their October 14 filing was time barred. The judge further held that under the relation back doctrine, the Farmers had no earlier valid

---

1. At the time of the incident, the relevant statute was 18 *Del. C.* § 6856(3). Eleven days after the Farmers filed their opening brief with this Court, the General Assembly amended the statute by adding a subsection and renumbering the existing subsections. *See* 2010 Del. Laws ch. 384 (2010). The provision relevant to this appeal remained textually unchanged, but became 18 *Del. C.* § 6856(4). We will refer to it as Section 6856(4) throughout this order. In full, Section 6856(4) reads:

 A plaintiff may toll the above statutes of limitations for a period of time up to 90 days from the applicable limitations contained in this section by sending a Notice of Intent to investigate to each potential defendant(s) by certified mail, return receipt requested, at the defendant(s') regular place of business. The notice shall state the name of the potential defendant(s), the potential plaintiff and give a brief description of the issue being investigated by plaintiff's counsel. The 90 days shall run from the last day of the applicable statute of limitations contained in this section. The notice shall not be filed with the court. If suit is filed after the applicable statute of limitations in this section, but before the 90–day period in this section expires, a copy of the notice shall be attached to the complaint to prove compliance with the statute of limitations.

filing to which their proffered amendment could relate. The Farmers now appeal.

## II. STANDARD OF REVIEW

 We review a final judgment granting a motion to dismiss *de novo.*[2] We also review statutory construction rulings *de novo* to determine whether the Superior Court erred as a matter of law in formulating or applying legal precepts.[3] Strict construction is particularly important when construing statutes of limitation,[4] even if strictly construing a statute of limitation would yield a "somewhat unfortunate result."[5] This Court has long recognized, however, that "[i]t is the well recognized duty of a court to construe statutes of limitation so as to establish just and reasonable guidelines for different classes of cases in light of the general policy of repose."[6]

## III. ANALYSIS

Affirming the Superior Court judgment in this case would endorse the following scenario:

a. The Farmers' claims arose on July 28, 2007;

b. The Farmers sent the requisite Notices of Intent to Brosch and Christiana by certified mail, return receipt requested, before July 28, 2009, in compliance with Section 6856(4);

c. July 28, 2009 came and went;

d. The Farmers filed their complaint on October 14, 2009 (within the 90 day extended limitations period of Section 6856(4));

e. Because they attached the certified proof of mailing but failed to attach the actual Notices of Intent to their complaint on October 14, the Farmers' claims actually expired nearly 11 weeks earlier on July 28.

On its face, this result establishes neither a just nor reasonable guideline. It is inconsistent with the normal operation of statutes of limitations. On July 28, 2009, when the two year period of limitations would otherwise have run, the Farmers' right to sue had either expired or it had been extended by operation of law (the sending of the Notices by certified mail pursuant to Section 6856(4)) until October 26, 2010. These are the only two possibilities and that issue could be determined on July 28. As of that date, neither the Farmers nor the court needed to await the earlier of their filing or October 26 to determine the status of their claim.

 The overarching intent of the Delaware Medical Malpractice Act is to "limit the number of medical malpractice actions."[7] Nevertheless, the official synopsis of the legislation that added the text of subsection (4) states plainly: "Additionally a process to allow up to ninety (90) days to investigate a potential negligence claim is added and would *extend the medical malpractice statute of limitations accordingly.*"[8] Thus, the intent of Section 6856(4) is to *extend* the limitations period, uninterrupted, by 90 days. If we were to hold

**2.** *Leatherbury v. Greenspun,* 939 A.2d 1284, 1288 (Del.2007) (citing *Candlewood Timber Group, LLC v. Pan Am. Energy, LLC,* 859 A.2d 989, 997 (Del.2004)).

**3.** *Id.* (citing *Christiana Hosp. v. Fattori,* 714 A.2d 754, 756 (Del.1998)).

**4.** *Id.* at 1292.

**5.** *Id.*

**6.** *Ewing v. Beck,* 520 A.2d 653, 662 (Del. 1987).

**7.** *Leatherbury,* 939 A.2d at 1290.

**8.** *Id.* (emphasis added).

that a complaint filed during the extra 90 days time barred merely because it did not attach notices of intent, the result would not faithfully extend the statute of limitations consistent with legislative intent. Rather, we would be validating a procedure under which the plaintiff would not know for certain until he filed a complaint whether the original or the extended limitations period applied to his claim. We do not believe the General Assembly intended such a draconian result.

That result also would be inconsistent with the unambiguous language of Section 6856(4). The General Assembly could have made the entire subsection a single sentence, but it did not. Instead, the General Assembly said—in substance—that the way to toll the two year limitations period for 90 additional days is "by sending a Notice of Intent to investigate to each potential defendant(s) by certified mail, return receipt requested, at the defendant(s') regular place of business." [9] If the General Assembly intended to require attachment of the Notice of Intent to the complaint as a condition precedent to extending the limitations period, then it would not have ended the sentence with a period after the word "business." The statute would have mandated attachment together with the certified mail, return receipt requirement, in order to toll the statute effectively. It did not. Instead, not until the very end of the subsection, several sentences removed from the operative language, did the General Assembly address the attachment issue. There, the General Assembly stated that a plaintiff who decides to file a complaint within the extended 90 day limitations period shall attach the notices to his complaint. The General Assembly also explained, in plain language, the reason for this require-

ment—"to prove compliance with the statute of limitations." [10] The attachment requirement is not a legal prerequisite to a plaintiff's entitlement to an extended limitations period. Rather, it serves merely as documentation in the initial pleading that confirms that the notice enlarging the time to file was sent.

Although *Leatherbury* explained that Section 6856(4) demands strict compliance, the critical difference between this case and *Leatherbury* is the nature of the plaintiffs' mistake. In *Leatherbury,* the alleged failure pertained to an element of Section 6856(4) that was legally a prerequisite to extending the limitations period—providing notice to the defendants *before* the original two year statute of limitations expired. Specifically, the plaintiff in *Leatherbury* sent the Notices of Intent to the defendants via Federal Express, rather than by certified mail, return receipt requested. By mandating the certified mail and return receipt requirements in the statute, the General Assembly made clear its intent that defendants receive notice of extended limitations periods by a particular method before the original two year limitations period has expired. Because the plaintiff in *Leatherbury* failed to comply with the statutory requirement of delivery of the notices before the date on which the period of limitations expired, the statute barred his claim.

Here, however, the Farmers complied with the statutory mandates within the two year period of limitations. Therefore, as of July 28, 2009, the Farmers had an additional 90 days remaining before the statute of limitations would preclude them from filing their claim. When they filed their complaint on October 14, they failed to attach the Notices of Intent to their com-

---

9. § 6856(4).

10. *Id.*

plaint. To the extent the statute requires that the Notices "shall be attached" to the complaint, the sole purpose of that requirement is to confirm that the Notices were timely sent. Here, because the Farmers attached certified mail receipts (but omitted the Notices themselves), they confirmed that the Notices were timely sent, thereby satisfying the policy underlying the pleading requirement. Their failure to satisfy a special rule of pleading was a shortcoming appropriately remedied by a Motion to Amend for the purpose of attaching the Notices to the complaint.

## IV. CONCLUSION

Although the entirety of Section 6856(4) is mandatory, to toll the statute for the extended 90 day period, a plaintiff need strictly comply with only the first sentence. That is, he must "send[ ] a [valid] Notice of Intent to investigate to each potential defendant(s) by certified mail, return receipt requested, at the defendant(s') regular place of business." [11] Having done this, a plaintiff will have effectively extended the limitations period by 90 days. The remainder of Section 6856(4) lists additional procedural guidelines for the plaintiff to follow. Although these guidelines must be followed, they do not mandate additional hoops a plaintiff must jump through *before* he can toll the statute. The attachment requirement is more akin to a special rule of pleading that, if not followed, is subject to cure by filing a Motion to Amend a faulty original complaint on the basis of the relation back doctrine. Under Superior Court Rule 15(a), leave of court to amend "shall be freely given when justice so requires."

We do not decide here whether the Farmers should be granted leave to amend

their complaint. That determination is left to the "sound discretion of the trial judge," [12] which we would review for error, if at all, in a future proceeding. Here, we simply decide that it was error for the trial judge to deny their motion to amend *on the basis that* they had no valid filing to which their proffered amendment could relate back. Because they effectively tolled the statute, their claims were not barred. The judgment of the Superior Court is reversed and this case is remanded for proceedings consistent with this Opinion.

---

11. *Id.*

12. *Wilson v. Wilson,* 2005 WL 147942, at *2 (Del.Super.Ct. Jan. 14, 2005).